Norman J. Mullen
Special Assistant Attorney General
Department of Environmental Quality
Legal Unit, Metcalf Building
P.O. Box 200901
Helena, Montana 59620-0901
Telephone: (406) 444-4961
nmullen@mt.gov
Attorney for Plaintiff

NANCY SWEENEY
CLERK DISTRICT COURT

2016 DEC 15 AM 10: 07

FILED
BY _____
DEPUTY

INDEXED

FILED
FEB 0 3 2017
Clerk, U.S. District Court
District Of Montana
Helena

## MONTANA FIRST JUDICIAL DISTRICT COURT
## LEWIS AND CLARK COUNTY MONTANA

| | |
|---|---|
| MONTANA DEPARTMENT OF ENVIRONMENTAL QUALITY,<br><br>Plaintiff,<br><br>vs.<br><br>VOLKSWAGEN AKTIENGESELLSCHAFT D/B/A VOLKSWAGEN GROUP AND/OR VOLKSWAGEN AG, AUDI AG, VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN GROUP OF AMERICA CHATTANOOGA OPERATIONS, LLC, AUDI OF AMERICA, LLC, DR. ING. H.C. F. PORSCHE D/B/A PORSCHE AG, AND PORSCHE CARS NORTH AMERICA INC.,<br><br>Defendants. | Case No. DDV 2016-1045<br><br>Judge CV-17-3-H-CCL<br>Dept. JAMES P. REYNOLDS<br>Presiding Judge<br><br>**COMPLAINT & APPLICATION FOR INJUNCTION** |

Plaintiff Montana Department of Environmental Quality alleges and complains against the Defendants as follows:

### I. INTRODUCTION

1. This is a civil action brought by the Montana Department of Environmental Quality (Department) against Volkswagen, Audi, Porsche, and related companies for penalties

and injunctive relief for intentionally installing "defeat devices" in about 2,400 light duty diesel motor vehicles now registered in Montana. Defendants' defeat devices remove, alter, or render inoperative pollution control devices required by federal law, and produce emissions 5 to 40 times the federal emission limits for nitrogen oxides ($NO_x$) each time one of those vehicles is operated. Defendants' actions violate Administrative Rule of Montana ("ARM") 17.8.325(1), which was adopted to implement the Clean Air Act of Montana ("Act"), Title 75, chapter 2, parts 1-3, Montana Code Annotated ("MCA"). A violation of a rule adopted under the Act subjects a violator to civil penalties of up to $10,000 per violation and to injunctive relief. Each day of violation is a separate violation. § 75-2-413, MCA.

## II. PARTIES

2. The Department is an agency of the State of Montana. § 2-15-3501, MCA. It is charged by § 75-2-112(1), MCA, to administer the Clean Air Act of Montana and rules adopted under that Act. The Department is authorized by § 75-2-413, MCA, to file actions such as this seeking civil penalties and injunctive relief.

3. Defendants (collectively, "Defendants," "Volkswagen," or "VW") are Volkswagen Aktiengesellschaft d/b/a Volkswagen Group and/or Volkswagen AG, Audi AG, Audi of America Inc., Audi of America LLC, Volkswagen Group of America Inc., Volkswagen Group of America Chattanooga Operations LLC, Dr. Ing. h.c. F. Porsche d/b/a Porsche AG, and Porsche Cars North America Inc.

4. Defendants are a multibillion dollar enterprise that designs, manufactures, exports, imports, and distributes motor vehicles for sale around the world, including in the

United States and Montana. Included in those motor vehicles are the light duty diesel motor vehicles in which the defeat devices at issue here were installed.

5. Volkswagen AG is a publicly-held German corporation with North American sales of approximately $40 billion in 2015.

6. Volkswagen Group of America Inc. (VWoA), is incorporated under the laws of New Jersey, and is a wholly-owned subsidiary of Volkswagen AG.

7. Volkswagen Group of America Chattanooga Operations LLC (VWoA Chattanooga) is a Tennessee limited liability company with its principal place of business at 8001 Volkswagen Drive, Chattanooga, Tennessee, 37416. It is a subsidiary of VWoA.

8. Audi AG is a German corporation, and is approximately 99.55% owned by Volkswagen AG.

9. Audi of America LLC ("Audi America") is a Delaware limited liability company, with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171. Audi America is a wholly-owned U.S. subsidiary of Audi AG.

10. Dr. Ing. h.c. F. Porsche d/b/a Porsche AG is a German corporation, and is a wholly-owned subsidiary of Volkswagen AG.

11. Porsche Cars North America Inc., is a Delaware corporation, and is a wholly-owned subsidiary of Porsche AG.

### III. JURISDICTION

12. Each defendant is a person under § 75-2-103(15), MCA. Defendants have transacted and are transacting business in the State of Montana by repeatedly, purposely, and knowingly directing their products into the stream of commerce here. From 2009 through 2016,

Defendants manufactured about 11 million motor vehicles with defeat devices and distributed about 500,000 of them for sale in the United States. They distributed some of those motor vehicles to at least four VW dealerships and one Audi dealership in Montana with the intent that those dealerships would sell or lease the vehicles to consumers. Many of the 2,400 vehicles with defeat devices that are registered in Montana were brought by Defendants into Montana to be sold here. The Defendants are subject to the personal jurisdiction of this Court under Mont.R.Civ.P. 4(b)(1) because they transact business in Montana and because they have committed and are committing violations of a Montana air quality rule in Montana.

13. "Registered" means a motor vehicle for which the process of registration in § 61-1-101(61), MCA, has been completed.

14. This Court has personal jurisdiction over Volkswagen AG because it transacts business in Montana and has caused violations in Montana of a rule adopted under the Act. VW AG interacts with VWoA, its wholly-owned U.S. subsidiary, by regularly submitting information to VWoA necessary for VWoA to complete the required applications to obtain certificates of conformity ("CoCs") from the United States Environmental Protection Agency ("EPA") for a significant number of the vehicles that Volkswagen AG sells in the United States, including the 2,400 vehicles at issue in this case. The Department alleges, subject to a reasonable opportunity for further investigation or discovery, that in connection with this and other interactions with its wholly-owned subsidiary, Volkswagen AG has attended meetings at, and corresponded, telephoned, and otherwise communicated with, VWoA's United States offices in Michigan. Volkswagen AG has also attended meetings at, and had other communications with, EPA's Ann Arbor, Michigan, Office of Transportation and Air Quality ("OTAQ"), the EPA office in charge of issuing CoCs. Further, Volkswagen AG delivered or arranged for delivery of its cars to the

United States with the intent to market and sell them in all 50 states, including Montana, and in fact, VW's motor vehicles were sold in Montana.

15. Some of the VW motor vehicles with defeat devices that were delivered for sale by Volkswagen AG were and are registered and being operated in Montana at times relevant to this Complaint.

16. This Court's exercise of jurisdiction over Volkswagen AG is therefore consistent with due process.

17. This Court has personal jurisdiction over VWoA because it transacts business in Montana and has caused violations in Montana of a rule adopted under the Act. VWoA has an Engineering and Environmental Office in Michigan (EEO) from which it interacts with EPA OTAQ in connection with obtaining many of the CoCs for vehicles sold in the United States, including many of the light duty diesel motor vehicles addressed in this Complaint. Further, VWoA delivered or arranged for delivery of many of the vehicles addressed in this Complaint within the United States with the intent to market and sell them in all 50 states, including Montana, and in fact, some of those vehicles were sold in Montana.

18. Some of the VW motor vehicles with defeat devices that were delivered for sale by VWoA were and are registered and being operated in Montana at times relevant to this Complaint.

19. This Court's exercise of jurisdiction over VWoA is therefore consistent with due process.

20. This Court has personal jurisdiction over Defendant Audi AG because it transacts business in Montana and has caused violations in Montana of a rule adopted under the Act. In addition, this Court's exercise of jurisdiction over Audi AG is consistent with due process.

Among other things, Audi AG has interacted with VWoA's Auburn Hills, Michigan office by regularly submitting information to that office necessary for VWoA to complete the required applications to obtain CoCs for the vehicles that Audi AG distributes for sale in the United States. These vehicles include the light duty diesel vehicles addressed in this Complaint. The Department alleges, subject to a reasonable opportunity for further investigation or discovery, that in connection with this and other interactions with VWoA, Audi AG has attended meetings at VWoA's Auburn Hills office, and corresponded, telephoned, and otherwise communicated with VWoA's Auburn Hills office. Audi AG has also attended meetings at, and had other communications with, EPA's OTAQ in Ann Arbor, Michigan. Further, Audi AG delivered or arranged for delivery of its cars to the United States with the intent to market and sell them in all 50 states, including Montana, and in fact, Audi cars were sold in Montana.

21. Some of the Audi motor vehicles with defeat devices that were distributed for sale by Audi AG were and are registered and being operated in Montana at times relevant to this Complaint.

22. This Court has personal jurisdiction over Audi America because it transacts business in Montana and has caused violations in Montana of a rule adopted under the Act. In addition, this Court's exercise of jurisdiction over Audi America is consistent with due process. Audi America engages in business, including the advertising, marketing and sale of Audi automobiles, in all 50 states, including Montana. Audi America distributed Audis, including some of the light duty diesel vehicles addressed in this Complaint, for sale in Montana from 2009 through at least 2015 through an Audi dealership in Bozeman, Montana.

23. Some of the Audi motor vehicles with defeat devices that were distributed for sale by Audi America were and are registered and being operated in Montana at times relevant to this Complaint.

24. This Court has personal jurisdiction over Volkswagen Group of America Chattanooga Operations LLC because VWoA Chattanooga transacts business in Montana and has caused violations in Montana of a rule adopted under the Act. In addition, this Court's exercise of jurisdiction over VWoA Chattanooga is consistent with due process.

25. The Department alleges, subject to a reasonable opportunity for further investigation or discovery, that, among other things: 1) VWoA is the corporate parent of VWoA Chattanooga; 2) VWoA Chattanooga manufactures and manufactured certain Passat motor vehicles and installed defeat devices in them; 3) VWoA Chattanooga interacts with VWoA, in connection with vehicle manufacturing and other matters; and 4) in connection with this and other interactions with its parent company, VWoA Chattanooga has attended meetings at VWoA's Auburn Hills, Michigan office and/or corresponded, telephoned and otherwise communicated with that office. Further, VWoA Chattanooga delivered or arranged for delivery of its cars within the United States with the intent to market and sell them in all 50 states, including Montana, and in fact, its motor vehicles, including some of the 2,400 motor vehicles with defeat devices registered in Montana, were delivered by VWoA Chattanooga for sale in Montana and were sold in Montana.

26. Some of the Passat motor vehicles with defeat devices that were manufactured by VWoA Chattanooga were and are registered and being operated in Montana at times relevant to this Complaint.

27.   This Court has personal jurisdiction over Defendant Porsche AG because it has caused violations in Montana of a rule adopted under the Act. In addition, this Court's exercise of jurisdiction over Porsche AG is consistent with due process.

28.   The Department alleges, subject to a reasonable opportunity for further investigation or discovery, that, among other things: 1) Porsche AG has interacted with VWoA's Auburn Hills, Michigan office in connection with obtaining CoCs for the Porsche light duty diesel vehicles addressed in this Complaint; and 2) in connection with this and other interactions with VWoA, Porsche AG has attended meetings at VWoA's Auburn Hills office and/or corresponded, telephoned, and otherwise communicated with VWoA's Auburn Hills office. Porsche AG has also attended meetings at, and had other communications with, EPA's OTAQ in Ann Arbor, Michigan. Further, Porsche AG delivered or arranged for delivery of Porsche cars to the United States with the intent to market and sell them in the United States, and have them operated in the United States.

29.   Some of the Porsche motor vehicles with defeat devices were and are registered and being operated in Montana at times relevant to this Complaint.

30.   This Court has personal jurisdiction over Defendant Porsche Cars North America Inc. because it has caused violations in Montana of a rule adopted under the Act. In addition, this Court's exercise of jurisdiction over Porsche Cars North America Inc. is consistent with due process.

31.   The Department alleges, subject to a reasonable opportunity for further investigation or discovery, that, among other things: 1) Porsche Cars North America Inc has interacted with VWoA's Auburn Hills, Michigan office in connection with obtaining CoCs for the Porsche light duty diesel vehicles addressed in this Complaint; and 2) in connection with this

and other interactions with VWoA, Porsche Cars North America Inc. has attended meetings at VWoA's Auburn Hills office and/or corresponded, telephoned, and otherwise communicated with VWoA's Auburn Hills office. Porsche Cars North America Inc. has also attended meetings at, and had other communications with, EPA's OTAQ in Ann Arbor, Michigan. Further, Porsche Cars North America Inc. delivered or arranged for delivery of Porsche cars within the United States with the intent to market and sell them in the United States.

32. Porsche motor vehicles with defeat devices were and are registered and being operated in Montana at times relevant to this Complaint.

33. By designing, manufacturing, or distributing for sale motor vehicles with defeat devices from 2009 through the present, and causing the use of defeat devices that alter or render inoperative pollution control devices that increase $NO_x$ pollution by 5 to 40 times the federal motor vehicle emissions standards in about 2,400 motor vehicles registered in Montana, and by bringing those vehicles into Montana with the intent that they be sold or operated here, Defendants have intentionally altered, removed, or rendered inoperative a pollution control device required by federal law. This violated and continues to violate Montana law and constitutes sufficient contacts so that Defendants should reasonably have anticipated being haled into court in Montana. By behaving as alleged above, Defendants purposefully availed themselves of the privilege to conduct business in Montana, and this Court's exercise of personal jurisdiction over them comports with fair play and substantial justice and is reasonable. Defendants are therefore subject to the personal jurisdiction of this Court.

34. This Court has subject matter jurisdiction over the claims in this case under § 75-2-413(1), MCA.

35. Because motor vehicles with defeat devices manufactured, distributed, or sold by Defendants were and are registered in Lewis and Clark County and were and are regularly being driven in that county, violations of ARM 17.8.325(1) were committed and are being committed in that county, and venue is proper in this Court under § 75-2-413(2)(b), MCA.

## IV. GENERAL ALLEGATIONS

33. 42 United States Code ("U.S.C.") § 7521(a) requires EPA to promulgate emissions standards for new motor vehicles for $NO_x$ and other air pollutants.

34. 40 Code of Federal Regulations ("C.F.R.") § 86.1811-04 sets emission standards and test procedures for light-duty motor vehicles, including emission standards for $NO_x$.

35. A manufacturer may not sell, and a person may not import, any new motor vehicle not covered by a CoC issued by EPA. 42 U.S.C. § 7522(a)(1). Each application for a CoC must describe the vehicle's emission control system. 40 CFR § 86.094-21(b)(1)(i). A vehicle is covered by a CoC and may therefore be imported into or sold in the U.S. only if it has been granted a CoC and if the vehicle is as described in the application for a CoC in all material respects. 42 U.S.C. § 7522(a)(1) and 40 C.F.R. § 86.1848-10(c)(6). The emission control system described in a CoC is therefore required by federal law and regulation.

36. To increase its share of the sale of motor vehicles in the United States, VW tried in the early-to-mid 2000s to make a diesel engine that was fuel efficient, high performing, and low-enough polluting that it could meet the federal emission limits for $NO_x$. However, VW could not achieve those goals at a cost it was willing to pay, but still needed a CoC from EPA for each type of motor vehicle to import or sell them in the United States. So, VW instead intentionally decided to cheat by developing software that would work with the electronic diesel

control ("EDC") unit that regulates engines in its light duty diesel motor vehicles. The EDC may also be known as an "electronic control module" ("ECM"). The software and EDC work together to sense certain inputs: the position of the steering wheel, vehicle speed, duration of the engine's operation, and barometric pressure. The EDC evaluates the inputs, and recognizes when a vehicle's emissions are being tested on a dynamometer, which is the equivalent of a motor vehicle treadmill.

37. When a vehicle that is a subject of this Complaint is being tested, the EDC and software adjust fuel levels, exhaust gas recirculation, air pressure levels, and urea injection rates so that the motor vehicle appears to meet federal emission standards during testing.

38. The EDC and software that reduce emissions during testing are a "defeat device."

39. During normal driving, when emissions are not being tested, the defeat device senses the lack of testing and removes, alters, or renders inoperative the vehicle's emissions control system. This causes the vehicle to increase emissions to 5 to 40 times the federal $NO_x$ limits. The motor vehicles into which the defeat devices were installed are referred to as "Subject Vehicles." A table showing the Subject Vehicles follows.

## 2.0 Liter Diesel Models

| Model Year (MY) | EPA Test Group | Vehicle Make and Model(s) |
|---|---|---|
| 2009 | 9VWXV02.035N 9VWXV02.0U5N | VW Jetta, VW Jetta Sportwagen |
| 2010 | AVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2011 | BVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2012 | CVWXV02.0U5N | VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |

| | | |
|---|---|---|
| 2013 | DVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen, Audi A3 |
| 2014 | EVWXV02.0U5N | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportwagen |
| 2012<br>2013<br>2014 | CVWXV02.0U4S<br>DVWXV02.0U4S<br>EVWXV02.0U4S | VW Passat |
| 2015 | FVGAV02.0VAL | VW Beetle, VW Beetle Convertible, VW Golf, VW Golf Sportwagen, VW Jetta, VW Passat, Audi A3 |

### 3.0 Liter Diesel Models

| Model Year (MY) | EPA Test Groups | Vehicle Make and Model(s) |
|---|---|---|
| 2009 | 9ADXT03.03LD | VW Touareg, Audi Q7 |
| 2010 | AADXT03.03LD | VW Touareg, Audi Q7 |
| 2011 | BADXT03.02UG<br>BADXT03.03UG | VW Touareg<br>Audi Q7 |
| 2012 | CADXT03.02UG<br>CADXT03.03UG | VW Touareg<br>Audi Q7 |
| 2013 | DADXT03.02UG<br>DADXT03.03UG<br>DPRXT03.0CDD | VW Touareg<br>Audi Q7<br>Porsche Cayenne Diesel |
| 2014 | EADXT03.02UG<br>EADXT03.03UG<br>EPRXT03.0CDD<br>EADXJ03.04UG | VW Touareg<br>Audi Q7<br>Porsche Cayenne Diesel<br>Audi A6 Quattro, A7 Quattro, A8L, Q5 |
| 2015 | FVGAT03.0NU2<br>FVGAT03.0NU3<br>FPRXT03.0CDD<br>FVGAJ03.0NU4 | VW Touareg<br>Audi Q7<br>Porsche Cayenne Diesel<br>Audi A6 Quattro, A7 Quattro, A8L, Q5 |
| 2016 | GVGAT03.0NU2<br>GPRXT03.0CDD<br>GVGAJ03.0NU4 | VW Touareg<br>Porsche Cayenne Diesel<br>Audi A6 Quattro, A7 Quattro, A8L, Q5 |

40. The installation of defeat devices into the Subject Vehicles, and the resulting tests showing conformity with the federal emission standards for $NO_x$, enabled Defendants to falsely certify that the Subject Vehicles conformed to those standards. This led the federal EPA to approve the CoCs for those vehicles. As described above, EPA's approval of a CoC is a prerequisite for the importation into, or sale of motor vehicles in, the United States.

41.     The emission control system described in the CoCs for the Subject Vehicles, which on approval by EPA became a pollution control device required by federal law for those vehicles, did not include the defeat device. A motor vehicle with a defeat device cannot receive a CoC. EPA, *Advisory Circular Number 24: Prohibition on Use of Emission Control Defeat Device* (Dec. 11, 1972); *see also* 40 C.F.R. §§ 86.1809-01, 86.1809-10, and 86.1809-12.

42.     When a defeat device operates to cause a Subject Vehicle to emit more $NO_x$ than is allowed for the emissions control system required in the CoC, it removes, alters, or otherwise renders inoperative an air pollution control device that has been installed as a requirement of federal law or regulation.

43.     VW also launched an advertising and public relations campaign touting the non-existent environmental and performance benefits of its "Clean Diesel" vehicles. Between 2009 and 2015, VW sold about 500,000 Subject Vehicles in the United States. About 2,400 of these Subject Vehicles were and are registered and regularly being driven in Montana at times relevant to this Complaint, and some of them were and are registered and regularly being driven in Lewis and Clark County, Montana at times relevant to this Complaint.

44.     Only in about 2014-2015, after a nonprofit group, the International Council on Clean Transportation, contracted with the University of West Virginia to test diesel motor vehicles, and some of Defendants' vehicles were tested, did the fraud and emissions violations caused by the Defendants get exposed.

45.     Defendants continued to deny the fraud and violations until finally, in October 2015, VWoA's CEO admitted to the U.S. Congress that they had installed the defeat devices.

46.     Unless otherwise stated, the allegations set forth in this Complaint are based upon information obtained from the documents produced by Defendants, the testimony of Defendants'

current and former employees, publicly-available press reports, and information and documents obtained from other third-party sources through the Department's independent investigatory efforts.

47. At all times material to this action, Defendants worked in concert with the common objective of intentionally engaging in the emissions cheating scheme described in this Complaint. Each Defendant was, and still is, the agent of the others for this purpose, and each has acted, and is acting, for the common goals and profit of them all. Therefore, all acts and knowledge ascribed to one of them are properly imputed to the others.

48. Volkswagen AG, and its subsidiaries Audi AG, Porsche AG, and VWoA, designed the Subject Vehicles specifically for sale to United States customers by their U.S. affiliates.

49. Volkswagen AG allocates and controls the overall research and development and marketing budgets for the brands in the VW Group, including Audi and Porsche.

50. Volkswagen AG, VWoA, Audi AG, and Porsche AG share engineering research and development and engine concepts and designs, including, in this case, the development and installation of the illegal defeat devices in the Subject Vehicles.

51. At all relevant times, Volkswagen AG, Audi AG, and Porsche AG acted with and through their U.S. affiliates, in particular, VWoA's Michigan-based Engineering and Environmental Office ("EEO"), VWoA Chattanooga, Porsche NA, and Audi America, to interact with regulators to obtain CoCs so Defendants could import, distribute, and sell the Subject Vehicles in the United States.

52. Additionally, the EEO and Porsche NA engaged with regulators regarding emissions-related compliance and notification issues for Volkswagen AG, including the defeat device-related allegations described here.

53. Defendants intentionally engaged in many violations of a Montana air quality rule.

54. ARM 17.8.325(1) states that "[N]o person shall intentionally remove, alter or otherwise render inoperative, exhaust emission control, crank case ventilation or any other air pollution control device which has been installed as a requirement of federal law or regulation."

55. That rule was authorized and adopted under the Act, Title 75, chapter 2, parts 1-4, MCA. See § 75-2-111(1), MCA.

56. A violation of that rule is subject to a penalty of up to $10,000. Each day of violation is a separate violation. § 75-2-413(1), MCA.

57. Penalties for a violation of that rule are assessed using the factors in § 75-1-1001, MCA. See §§ 75-1-1001(2) and 75-2-413(1)(b), MCA. Penalties are calculated using the procedures in ARM Title 17, chapter 4, subchapter 3.

58. The Department has authority under Montana law to bring this action, and is not preempted by the federal Clean Air Act ("CAA").

59. That act is an example of "cooperative federalism," in which the states and the United States EPA act as partners to protect and enhance the quality of the nation's air quality. EPA promulgates regulations setting air quality standards. The states may adopt rules and state implementation plans (SIPs) that contain those rules for the implementation, maintenance, and enforcement of those air quality standards. States then submit SIPs to EPA for approval; when approved, a SIP becomes federal law.

60. ARM 17.8.325 was approved by EPA and was and is part of the Montana SIP at all times relevant to this Complaint.

61. Among the sources of pollution regulated under the CAA are motor vehicles. It establishes a regulatory framework in which the United States is responsible for setting and enforcing standards for new motor vehicles or new motor vehicle engines offered for sale in any of the United States, 42 U.S.C. § 7543(a), but the states are expressly left free to regulate the emissions of motor vehicles while "in–use" within a state. 42 U.S.C. § 7543(d).

62. Defendants have partially settled with most states, including Montana, concerning their violations of consumer protection laws that arose out of the facts outlined above. The settlement covers only consumer protection claims under unfair trade and deceptive acts and practices ("UDAP") laws. In Montana, these laws are codified in Title 30, chapter 14, part 1, MCA. Defendants executed the partial settlement on or about June 27, 2016.

63. As indicated in the settlement, its implementation is tied to the federal district court's Order Granting Final Approval of the 2.0 Liter TDI Consumer and Reseller Dealership Class Action settlement, Doc. 2102, MDL No. 2672 CRB (D. No. Cal. 10/25/16).

64. The Montana Attorney General's office is preparing an Assurance of Voluntary Compliance under § 30-14-112, MCA, for filing in Lewis and Clark County District Court to memorialize the consumer UDAP settlement. It provides that VW will pay $ 1,100 per Subject Vehicle sold or leased prior to September 18, 2015 in Montana.

65. In addition, under a federal consent decree issued in October 2016, Montana will be entitled to receive more than $11 million from a trust to be established by VW under the settlement to pay for projects to mitigate the excess $NO_x$ pollution from the Subject Vehicles.

This is out of a total fund for all states and tribes of $2.7 billion. Doc. 2103, pp. 4, l. 10-11, MDL No. 2672 CRB (D. No. Cal. 10/25/16).

66. The partial settlement does not extend to or settle claims by states for penalties or injunctive relief for violations of state environmental laws and rules over in-use operation of vehicles with defeat devices. Paragraph 8.B.vi. of that settlement expressly provides that such environmental claims are not barred.

## V. CLAIMS FOR RELIEF

67. The Department adopts ¶¶ 1-66 and incorporates them into these claims for relief as if they were fully set out in each claim.

### FIRST CLAIM- Violation of ARM 17.8.325

68. The Subject Vehicles were operated, often daily, by their owners or lessees, or their agents, from 2009 through 2016, and continue to be operated, often daily, in Montana and in Lewis and Clark County.

69. Each time one of the Subject Vehicles operates or has been operated in Montana, the defeat device operates or has operated to increase the emission of $NO_x$ by 5 to 40 times the federal emission limit.

70. Each time a defeat device on a motor vehicle manufactured or distributed for sale by one of the Defendants operates or has operated in Montana, Defendants are or were intentionally removing, altering, or otherwise rendering inoperative an air pollution control device which has been installed as a requirement of federal law or regulation.

71. Defendants, jointly and severally, are subject to a penalty of up to $10,000 for each violation. The number of violations and appropriate penalty amount for each violation will be subject to proof at trial.

**SECOND CLAIM- Injunction**

72. The Department is entitled to injunctions prohibiting the Defendants from continuing to commit the violations referred to above, and requiring Defendants to correct those violations. §§ 27-19-101 and 75-2-413(2)(a), MCA.

WHEREFORE, the Department respectfully requests this Court to set a trial date and enter judgment in the Department's favor against the Defendants for the penalties and injunctive relief requested above, for costs, and for such additional relief as may be appropriate.

STATE OF MONTANA
DEPARTMENT OF ENVIRONMENTAL QUALITY

December 14, 2016    By _____
NORMAN J. MULLEN,
Special Assistant Attorney General